# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/19/16

July 19, 2016

*By ECF*

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

MEMO ENDORSED

Re:   *United States v. Sean Stewart*
      **15 Cr. 287 (LTS)**

Dear Judge Swain:

Pursuant to Federal Rule of Evidence 806, Mr. Stewart seeks to introduce portions of Robert Stewart's post-arrest statement to impeach Robert Stewart's credibility with respect to inculpatory hearsay statements made by Robert Stewart during his March 24, 2015 and April 16th recorded meetings with Richard Cunniffe. Because the proposed impeachment material would be admissible if Robert Stewart were a witness at trial, it must be admitted as impeachment under Rule 806. *United States v. Trzaska*, 111 F.3d 1019, 1023 (2d Cir. 1997).

The government's only argument for excluding the post-arrest statements of Robert Stewart are that they are not "inconsistent" with the hearsay statements being offered by the government. For the reasons set forth below, this contention is meritless and, if sustained by the Court would both violate Rule 806 and deny Mr. Stewart his Sixth Amendment right to confrontation and his Fifth Amendment right to a fair trial.

### BACKGROUND

#### The March 24, 2015 Hearsay

At the July 15, 2016 conference, the Court, over Mr. Stewart's objections, granted the government's request to elicit testimony from Richard Cunniffe and to play an audio recording of a portion of a March 24, 2015 meeting between Robert Stewart and Richard Cunniffe. Robert Stewart is alleged to have told Mr. Cunniffe that at some unspecified time and place, Sean Stewart made the following statement:

I mean I still remember being [indiscernible] years ago. Sean would always say,

1

ah I can't believe you [indiscernible]. Said I can't believe it. I handed you this on a silver platter and you didn't invest in this, and you know. I said, Sean, did you ever get a call from the SEC, like I'm gonna actually do this [indiscernible], and he says [indiscernible].

Mar. 24 Transcript 8:14-20.

Although the statement as to what Cunniffe heard Robert say at the March 24, 2015 meeting is double hearsay, the Court ruled that the statement is admissible. With respect to Sean, the Court found that "the statement attributed to Sean is a nonhearsay statement by a party opponent that is admissible pursuant to Rule 801(d)(2)." H. Tr. at 18. As to Robert, the Court found that his statement to Cunniffe as to what Sean "always said" was a statement against penal interest. "Here, at a minimum, the passage would be probative in a criminal case against Robert because it supports the conclusion that Robert knowingly refused insider tips from Sean [and] the statement nonetheless is probative of Robert's alleged collusion with Sean . . . " H. Tr. at 19.

The government contends that the "silver platter" statement proves that Sean Stewart "deliberately" supplied his father with material, nonpublic information "with the expectation that Robert would profit from trading on that information." Gov't Mem. at 15. The government asserts that the comment means that Sean Stewart was chastising his father for failing to profit from a tip 'handed to [him] on a silver platter and that "[w]hat Stewart's chastisement of his father reveals is that Stewart knew very well that he was divulging material nonpublic information to Robert, in blatant breach of fiduciary duties owed to his employers and his clients, with the expectation that Robert would profit from trading on that information." *Id.*

The government stresses that the "probative value of the March 24, 2015 Recording is high." According to the government, the "silver platter" statement is "damning proof" and "palpable and devastating" evidence of guilt because it shows that "Stewart acted with deliberate intent that his father trade on material nonpublic information." Gov't Mem. at 11, 15.

### The April 16th Hearsay

The government also has informed the defense that it wants to introduce portions of a recorded meeting between Robert Stewart and Richard Cunniffe on April 16, 2015. During the course of this meeting, Robert Stewart tells Cunniffe

And it was only . . . I think it was only like three-three times. He has actually told me some other ones and I just discounted them and just say that you know what, I don't want to know about it and you know what? For some those never–ah yeah, this is a sure thing."

GX 3502-31, enclosed as Exhibit A, at 6.

### Robert Stewart's Post-Arrest Statements

On May 14, 2015, Robert Stewart was arrested on a federal criminal complaint by the FBI. After being taken into custody, Robert Stewart waived his Fifth Amendment rights and gave a lengthy recorded statement to FBI agents Eric Burn and Matthew Callahan. Mr. Stewart

2

confessed to having illegally traded on non-public information. He was repeatedly questioned about both the alleged "silver platter" statement and whether Sean knew that he was trading on inside information.

Mr. Stewart did not agree that Sean had actually made the "silver platter" statement that he told Cunniffe about. He also repeatedly denied that Sean had any knowledge that he was using information acquired from Sean to trade on stocks or to have others trade on stocks.

Agent Burns twice questioned Mr. Stewart about the "silver platter" statement. Despite Agent Burns' extremely leading questions, Robert refused to adopt his suggestion that his statements to Cunniffe about what Sean had told him were accurate. He also emphasized over and over again that Sean knew nothing about Robert trading on information he had learned from Sean.

AGENT: Tell me about the first time that Sean gave you information about a deal.

STEWART: Well, I wouldn't characterize any of these as, I mean, Sean would mention stuff…**I don't think he had any idea that I would on any of this stuff** – I didn't mention that I did to him…

AGENT: If that's true, how do you explain the comment you made to Rick, that Sean got angry with you when he gave you this information on a silver platter and you didn't invest

STEWART: I think I was just saying to Rick because Sean said, "Uh y'know, all these deal – *if* you were trading – you could've made like millions of dollars" . . . and I said, "Sean, nobody's going to trade and make millions of dollars on this stuff." **That wasn't his intention**.

AGENT: So why was Sean giving you this information?

STEWART: I think he was just proud of the fact that he was doing deals and y'know, almost like…hey, this deal is going to go way up…**not intending that somebody was going to trade on it.**

AGENT: Bob,

STEWART: No, seriously.

AGENT: I need you to be honest with us.

STEWART: I am, I am. Because I've never, I've never discussed this with Sean.

AGENT: Of course you have. You definitely discussed this with Sean

STEWART: About investing in money and making money . . .

AGENT: You got it all (sic) from the SCC asking about trading in a deal your son worked

3

on.

STEWART: Oh no, no . . . I got the information from him . . . I'm not saying that, I'm not, I'm not, I've never – I don't think Sean has any idea I ever traded on any of this information.

Post-Arrest Video Transcript, enclosed as Exhibit B, p. 1-2.[1]

Later in the interview, Agent Burns again attempted to get Robert to acknowledge that Sean had made the silver platter statement. Robert again informed Agent Burns that Sean had not made the remark.

AGENT: So why did he get mad at you? Why did he get mad at you and say, "I served this up to you on a silver platter and you didn't invest in it" – why did he get mad at you about that?

STEWART: Um, I think that – that day, he was clearly drinking

AGENT: You remember that day specifically?

STEWART: I remember – yeah know – during that period, because he was getting divorced, he's – yeah know – and um, he just said, "uh yeah know" **I think he might've said, "Yeah know, Uh, yeah know, I said I was working on this deal – gee, if you had invested, you would've made millions of dollars"** And I said, "Sean, yeah know, people . . . yeah know . . ."

AGENT: Get arrested for that?

STEWART: " . . . Get arrested for making millions and millions of dollars on confidential information."

Ex. B, p. 11

Throughout the interview, Robert Stewart continued to explain to Agent Burns that Sean had never supplied him with insider information with the expectation or knowledge that Robert would trade on the information.

AGENT: So, you don't – Sean wasn't giving you the information so that you could trade?

STEWART: No.

AGENT: What was he expecting you to do with it? Nothing?

STEWART: I don't know, I think he was just – you know – kind of bragging. Sean's bragging

---

[1] Exhibit B is a draft transcription of Mr. Stewart's post-arrest statement provided only for the purposes of this motion. Should Sean Stewart introduce it at trial, a final version of the transcript will be offered and provided to the Court pursuant to its Rules.

4

about, "Hey, I'm working on this deal, that deal."

Ex. B, p. 2.

\*\*\*

AGENT: Okay, so – you're going to say that Sean never knew that you were trading?

STEWART: No.

AGENT: He never knew Rick was trading?

STEWART: He doesn't even know who Rick is – no – never.

Ex. B, p. 7.

\*\*\*

STEWART: I – you know what – I, I think he was just – like I said…just saying, "this is what I'm working on," "oh, look at this, look at that." He had no clue – I'm telling ya – he doesn't know anything about this all – you know . . . And I'll be honest, he drinks too, he's got a drinking problem."

Ex. B, p. 8.

\*\*\*

AGENT: And you're convinced that Sean didn't know what you guys were doing?

STEWART: Yes – that – I can, honestly…

AGENT: With the exception of Kendle because you guys talked about it, right?

STEWART: Right, after the fact, after the fact . . .

Ex. B, p. 11.

## ARGUMENT

### I. ROBERT STEWART'S POST-ARREST STATEMENTS SHOULD BE ADMITTED UNDER FEDERAL RULE OF EVIDENCE 806 BECAUSE THE STATEMENTS IMPEACH HIS CREDIBILITY

**The Applicable Law**

Rule 806 authorizes a party to impeach a hearsay declarant's credibility as though he or she testified in court. The rule provides:

When a hearsay statement—or a statement described in Rule 801(d)(2)(C), (D), or

5

(E)—has been admitted in evidence, the declarant's credibility may be attacked, and the supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it. If the party against whom the statement was admitted calls the declarant as a witness, the party may examine the declarant on the statement as if on cross-examination.

Fed. R. Evid. 806.

The rationale of the rule, as explained by the Advisory Committee Note, is that "the declarant of a hearsay statement which is admitted in evidence is in effect a witness." *Id.* As such, "[h]is credibility should in fairness be subject to impeachment and support as though he had in fact testified. See Rules 608 and 609." *Id.* The Second Circuit adopts a plain reading of the statute: "Fed.R.Evid. 806 allows a hearsay declarant to be impeached as if the declarant had testified in court as a witness." *United States v. Trzaska*, 111 F.3d 1019, 1023 (2d Cir. 1997).

In accordance with Fed. R. Evid. 806 and Fed. R. Evid. 613, "a hearsay declarant may . . . be impeached if the declarant made inconsistent statements." *Id.* at 1023. Parties may impeach using inconsistent statements that were made "*prior to* or *subsequent* to the hearsay declaration." *Id.* at n. 1. *See also Unites States v. Hale*, 422 U.S. 171, 176 (1975). In contrast to the requirements of Rule 613, Rule 806 expressly permits the use of inconsistent statements even where the declarant has not—and will not—be afforded an opportunity to deny or explain the inconsistency. Fed. R. Evid. 806.

To be inconsistent, statements "need not be diametrically opposed." *Trzaska*, 111. F.3d at 1024, citing *United States v. Agajanian*, 852 F.2d 56, 56 (2d Cir. 1988). The inconsistency requirement is satisfied "if there is any variance between the statement and the testimony that has a reasonable bearing on credibility," or "the jury [could] reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a . . . statement of this tenor[.]" *Id.* at 1025 (internal citations omitted). "[T]he determination of whether statements are in fact inconsistent is committed to the sound discretion of the district court." *United States v. Agajanian*, 852 F.2d 56, 58 (2d Cir. 1988).

Applying this standard, courts in this Circuit routinely admit inconsistent statements to impeach hearsay declarants. *See, e.g., United States v. Meyerson*, 18 F.3d 153, 161 (2d Cir. 1994) (finding that "there is little question that the testimony was admissible under 806," where a defendant sought to impeach co-conspirator's hearsay statement that defendant had pressured him to falsify his billing by calling a different witness to testify that the hearsay declarant had previously told her he prepared bills based on his own judgement and had not inflated bills at the defendant's direction); *United States v. Uvino*, 590 F. Supp. 2d 372, 375 (E.D.N.Y. 2008) (allowing the defendant to read hearsay statements from FBI 302 forms where declarant admitted to faking a seizure, in order "to attack the veracity" of the declarants tape-recorded screams); *Annunziata v. City of New York*, 2008 WL 2229903, at *11 (S.D.N.Y. May 28, 2008) (granting defendant's *motion in limine* by admitting hearsay declarant's prior testimony and other statements to impeach Plaintiff's hearsay statements admitted against penal interest).

6

**Robert's post-arrest statements are inconsistent with the "silver platter" statement, and should be admitted under Rule 806 to impeach his credibility.**

Robert's post-arrest statements are patently inconsistent with his statements to Cunniffe as to what Sean supposedly said to him. During the March 24th conversation, Stewart quotes Sean as saying, "I handed this to you on a silver platter and you didn't invest in it." But, Robert's post-arrest statement (1) denies that Sean Stewart made that particular statement at all and (2) directly refutes the government's interpretation of the statement. If Robert Stewart testified at trial that Sean had made the "silver platter" statement as he described to Cunniffe and if he said that the statement was an instance of Sean "chastising" him for failing to invest on a tip of nonpublic information, Robert would be impeached with his post-arrest statements in which he said the opposite. Accordingly, the post-arrest statement must be admitted pursuant to Rule 806.

This is not a close question. The government wants the jury to believe that Sean made the "silver platter" statement that Robert related to Cunniffe on March 24, 2015. If Robert Stewart testified at trial to that effect, the defense would surely be allowed to confront him with his post-arrest statements to Agent Burns in which (despite Agent Burns efforts to put words into his mouth) he twice recalls Sean saying something quite different:

> **I think I was just saying to Rick because Sean said, "Uh, y'know all these deals–if you were trading–you could have made like millions of dollars." Ex. B, p. 2.**

> **"I think he might've said, "Yeah know, Uh, yeah know, I said I was working on this deal – gee, if you had invested, you would've made millions of dollars . . . and I said . . . ." Ex. B, p. 11.**

That is, although Robert Stewart did not deny that he told Cunniffe about something about a silver platter—the purported "confirmation" cited in the government's letter—he denied that Sean ever made that particular statement at all. This is plainly inconsistent with his prior recounting to Cunniffe that such a statement was made.

It is equally unsound for the government to argue that the post-arrest statement is not inconsistent with its inculpatory interpretation of the March 24, 2015 "silver platter" hearsay. On the one hand, the government wants the jury to believe that the "silver platter" comment is "palpable and devastating" evidence that Sean knowingly supplied Robert Stewart with material non-public information with the expectation that his father would trade on it. Gov't Mem. at 15-16. On the other hand, the government does not want the jury to hear that Robert Stewart (under threat of criminal prosecution were he to lie) denied that Sean *ever* knowingly supplied him with such information. But the government's desire to have its cake and eat it too is not a proper grounds for precluding the hearsay that contradicts the hearsay it wants the jury to believe.

The government's position, if adopted, would not only violate Rule 806 but would also deny Mr. Stewart his Sixth Amendment right to confrontation, resulting in a fundamentally unfair trial. The jury would be deprived of critical evidence that, if accepted, fatally undermines Robert Stewart's credibility regarding the government's supposed "damning" proof.

For the same reasons, the government cannot credibly urge that Robert's post-arrest statement does not contradict the relevant portion of the April 16th conversation. In his post-arrest statement, Robert Stewart over and over again denies that Sean knew anything about his insider trading. Those statements are surely inconsistent with his April 16th statement to Cunniffe that Sean tipped him three times and that he declined other tips.

The government, of course, is free to argue that the jury should credit the hearsay from the March 24 and April 16, 2015 meetings over what Robert Stewart told the FBI. But Rule 806 and the Sixth Amendment gives Mr. Stewart the right to present contrary statements that would give the jurors the ability to assess Robert Stewart's credibility.

Respectfully submitted,

/s/
Mark Gombiner
Martin Cohen
Christopher B. Greene
Assistant Federal Defenders
Tel. (212) 417-8737/ (212) 417-8718

Cc.   Sarah McCallum, Esq., by ECF
      Brooke Cucinella, Esq., by ECF

The government must file its written response to the foregoing motion by 4:00pm Wednesday July 20, 2016. Any reply must be filed by noon on Thursday July 21, 2016.

SO ORDERED:

_____ 7/19/16
HON. LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

8