# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

July 21, 2016

*By ECF*

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re:   *United States v. Sean Stewart*
      **15 Cr. 287 (LTS)**

Dear Judge Swain:

On July 20, 2016 the government supplied defense counsel with an FBI 302 prepared by Agent Eric Burns (the case agent) that purports to be the "interview summary" of the post-arrest interview of Robert Stewart. The bulk of Agent Burns' interview is devoted to questioning Robert Stewart about (1) Sean Stewart's knowledge of or participation in Robert Stewart's insider trading scheme; and (2) the "silver platter" comment. See Exhibit A. Agent Burns, however, entirely omits from his official interview summary *any* mention of (1) Robert Stewart's no fewer than 23 assertions that Sean Stewart did not participate or know about his insider trading; and (2) that Sean Stewart did not make the "silver platter" statement.

Mr. Stewart moves to permit cross-examination of Agent Eric Burns with respect to these critical, wholesale omissions from his report. Agent Burns' conduct in sanitizing his official investigative report so as to cleanse it of all statements that conflict with the government's theory of guilt constitutes uniquely powerful evidence of Agent Burns' bias and lack of credibility. Agent Burns' (at best) peculiar editorializing bears upon the accuracy of the other 302's prepared by Agent Burns, and it supports the defense argument that the FBI investigation into Sean Stewart lacked integrity. Accordingly, we move, pursuant to Kyles v. Whitley, 514 U.S. 419 (1995), to permit cross-examination as to this conduct.

## Background

On May 14, 2015, Robert Stewart was arrested at his home in Merrick, Long Island. After being transported to FBI offices, Mr. Stewart waived his Fifth Amendment rights and was questioned by FBI special agent Eric Burns.[1]

---

[1] Agent Matthew Callahan was also present, and also signed the subject 302, but did not conduct the questioning. If Agent Callahan testifies, we request that we also be permitted to question him in a similar manner.

Honorable Laura Taylor Swain                                    Page 2
July 21, 2016

**Re:**     ***United States v. Sean Stewart***
            **15 Cr. 287 (LTS)**

During the course of the interview, Robert Stewart admitted to participating in an insider trading scheme with Richard Cunniffe. However, Agent Burns focused his interrogation on getting Robert to admit that Sean Stewart knew about and participated in Robert's insider trading scheme. The first substantive question Agent Burns asked Robert Stewart was the following:

| BURNS: | Tell me about the first time that Sean gave you information about a deal. |
|---|---|
| STEWART: | Well, I wouldn't characterize any of these as, I mean, Sean would mention stuff...***I don't think he had any idea that I would trade on any of this stuff***—I didn't mention that I did to him. (Ex. A, at 1.) |

But that was only the beginning. Over the course of the interview, Robert Stewart denied Sean's knowing involvement in the scheme *twenty-three* times.[2] A limited selection of those denials is found below:

| BURNS: | So why was Sean giving you this information? |
|---|---|
| STEWART: | I think he was just proud of the fact that he was doing deals and y'know, almost like … hey, this deal is going to go way up … not intending that somebody was going to trade on it. |
| BURNS: | Bob. |
| STEWART: | No, seriously. |
| BURNS: | I need you to be honest with us. |
| STEWART: | I am, I am. ***Because I've never, I've never discussed this with Sean.*** (Ex. A, at 2.) |

\* \* \*

| BURNS: | So, you don't—Sean wasn't giving you the information so that you could trade? |
|---|---|
| STEWART: | ***No.*** |
| BURNS: | What was he expecting you to do with it? Nothing? |
| STEWART: | I don't know, I think he was just – you know – kind of bragging. Sean's bragging about, "Hey I'm working on this deal, that deal." (Id.) |

\* \* \*

| STEWART: | No, no, they've never met – I don't even think he knows Rick. |
|---|---|

---

[2] We have enclosed as Exhibit A a draft transcript of Robert Stewart's post-arrest statement with his denials highlighted for the Court's convenience.

Honorable Laura Taylor Swain                                          Page 3
July 21, 2016

Re:     ***United States v. Sean Stewart***
        **15 Cr. 287 (LTS)**

        He has no idea. ***Sean doesn't even know I traded***. (Ex. A, at 8.)

* * *

BURNS:          And you're convinced that ***Sean didn't know*** what you guys
                were doing?
STEWART:        *Yes* – that – I can, honestly. (Ex. A, at 11.)

Robert Stewart did not deny Sean's involvement in the scheme out the blue. Rather, it was in response to persistent and varied attempts by Agent Burns to elicit the statement he so badly wanted: that the target of their investigation, who they had assumed was a knowing participating in the insider trading scheme, in fact was.

The next day, Agent Burns drafted the 302 to memorialize the interview. As the Court is aware, FBI agents use such forms "to record investigative activity, particularly, although not exclusively, the results of interviews." Dep't of Justice Off. of the Inspector Gen., An Investigation of the Belated Production of Documents in the Oklahoma City Bombing Case, dated Mar. 19, 2002. They are generated in virtually every federal criminal investigation and are an essential part of the trials that follow. Agent Burns himself described the document as "an interview summary."

Notwithstanding Agent Burns' myopic focus on Sean Stewart's alleged role in the scheme, his 302 lacked *any* reference whatsoever to Robert's insistent and repeated statements that Sean had no knowledge of his trading. Agent Burns did not merely minimize the number of times Robert said it or downplay the insistence with which Robert conveyed it. He omitted the statements entirely. The 302 also lacked any reference to Robert's denial that Sean had made the silver platter statement.

His failure to include these significant statements casts serious doubt on the 48 other 302s Agent Burns filled out throughout the course of this investigation, none of which, as far as defense counsel is aware, were recorded. If it is Agent Burns' practice to eliminate evidence inconsistent with his theory of the case, as it apparently was here, he may have done so with the countless other interviews as well.

Accordingly, Mr. Stewart should be permitted to cross examine Agent Burns as to these critical omissions in his official investigatory report.

**Argument**

The Supreme Court has recognized that it is a common and legitimate defense strategy "to discredit the caliber of the investigation or the decision to charge the defendant." Kyles v. Whitley, 514 U.S. 419, 446 (1995) (Brady violation where state withheld information that could have been used at trial to attack the police investigation); see Alvarez v. Ercole, 763 F.3d 223, 232 (2d Cir. 2014) (Confrontation Clause violation where court prevented defense counsel from

Honorable Laura Taylor Swain                                           Page 4
July 21, 2016

Re:   *United States v. Sean Stewart*
      **15 Cr. 287 (LTS)**

cross-examining detective about unpursued leads).  Attacking the integrity of the government's
investigation is "a tactic that has never lost its place in the criminal defense reasonable doubt
armamentarium."  Orena v. United States, 956 F. Supp. 1071, 1100 (E.D.N.Y. 1997).  And it is
particularly important where the cross-examination may lay bare a testifying witness' bias.  As
the Supreme Court has made clear, the "partiality of a witness is . . . always relevant as
discrediting the witness and affecting the weight of his testimony."  Davis v. Alaska, 415 U.S.
308, 316 (1974) (internal citations omitted); see also Henry v. Speckard, 22 F.3d 1209, 1214
(2d. Cir. 1994) ("any bias or prejudice against the defendant is one of the principal subjects for
cross-examination").

       Agent Burns' failure to record the most important—and exculpatory—statements made
by Robert during his post-arrest interview demonstrates an apparent willingness to exclude from
his investigatory summary any information which contradicts his pre-ordained conclusion.  As
we expect to show at trial, this is not the only such instance.  As described above, Agent Burns
conducted at least 48 other recorded interviews during his investigation.  The jury is entitled to
know whether Agent Burns omitted other evidence in his efforts to "record investigative
activity"[3] as to those other 48 interviews.  It goes directly to Agent Burns' bias, and the integrity
of the entire investigation into Sean Stewart.

       Finally, in addition to being relevant to the jury's assessment of the integrity of Agent
Burns' testimony and investigation, the Confrontation Clause "*requires* that a criminal defendant
be afforded a meaningful opportunity to cross-examine witnesses against him in order to
show bias or improper motive for their testimony."  Brinson v. Walker, 547 F.3d 387, 392
(2d. Cir. 2008) (emphasis added).

       Both the Constitution and common sense dictate that Mr. Stewart be permitted to cross
examine Agent Burns on his documented failure to record exculpatory statements in his
investigative notes.  We therefore request that Court grant Mr. Stewart's motion to do so.

---

[3] The government may seek to minimize Agent Burns' conduct by arguing that because there is a video of the
interview, there is no prejudice.  But if the video is the "true" evidence of Robert Stewart's statements, one wonders
why Agent Burns wrote the 302 at all.  It must serve some purpose.  And having sought to serve that purpose, Agent
Burns made the conscious decision to omit crucial exculpatory evidence.  Were another member of the investigatory
team to mistakenly rely on Agent Burns' recounting of the interview, they would be left with the fatal misimpression
that Robert Stewart had not strenuously denied Sean Stewart's knowing involvement in the scheme.  It would only
compound the confirmation bias that infected Agent Burn's own investigation.

Honorable Laura Taylor Swain                                           Page 5
July 21, 2016

Re:     *United States v. Sean Stewart*
        **15 Cr. 287 (LTS)**

                                        Respectfully Submitted,

                                        Christopher B. Greene
                                        Martin Cohen
                                        Mark Gombiner
                                        Assistant Federal Defenders
                                        Tel. (212) 417-8737 / (212) 417-8718

Cc.     Sarah McCallum, Esq., by Email
        Brooke Cucinella, Esq., by Email